UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 23-cr-10125-ADB |
| | * | |
| TREVOR JONES, | * | |
| | * | |
| Defendant. | * | |

# **MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

BURROUGHS, D.J.

Defendant Trevor Jones ("Defendant") has moved to suppress evidence obtained from the search of his two cell phones, which were seized during the course of an arrest for drug trafficking. [ECF No. 61]. Defendant argues that the search of the cell phones was unreasonable and violated the Fourth Amendment because the investigating authorities seized the phones on December 21, 2022 but did not apply for a warrant to search their contents for four months. [ECF No. 62]. For the reasons outlined below, Defendant's motion to suppress is DENIED.

## I.    BACKGROUND

The parties do not dispute the relevant facts, which the Court draws from the affidavits and exhibits that the parties have filed in connection with the instant motion.

On December 21, 2022, a Massachusetts State Police query of the registration of a black BMW parked at the Motel 6 in Danvers, Massachusetts determined that the vehicle was registered to Defendant. [ECF No. 64-1 ¶ 10; ECF No. 64-4 at 3]. The query further revealed three active warrants for Jones's arrest: a warrant for resisting arrest, a warrant for drug possession with intent to distribute a Class A controlled substance, and a warrant for driving with

a suspended license. [ECF No. 64-1 ¶ 10; ECF No. 64-4 at 3–4]. Shortly thereafter, Defendant departed the hotel parking lot in his vehicle, and the police conducted a stop of the vehicle based on motor vehicle violations, ultimately placing both Defendant and his passenger, "Victim 1," under arrest for outstanding warrants. [ECF No. 64-1 ¶ 10]. Police searched the vehicle and found three gabapentin pills on the floor and distribution quantities of suspected fentanyl and crack cocaine under the driver's seat, where Defendant had been sitting, and $4,500 cash in a fanny pack around Defendant's neck. [Id.; ECF No. 64-4 at 4]. Police also recovered a black LG cellphone and a black T-Mobile cellphone incident to the arrest. [ECF No. 64-1 ¶ 9]. Police ultimately charged both Defendant and Victim 1 with possession of the drugs recovered from the car. [Id. ¶ 10].

After booking, Victim 1 agreed to be interviewed by Massachusetts State Police detectives. [ECF No. 64-1 ¶ 12]. She looked to the detectives like she was sleep deprived and malnourished, and she was dressed inappropriately for the winter weather. [Id.]. During the interview, she admitted that she was engaging in commercial sex. [Id.]. She also indicated that Defendant had purchased the two cellphones found during the arrest, neither of which had a service plan, and both of which were operating on Wi-Fi only, and that the money found on Defendant's person was his. [Id.].

Defendant was held on cash bail on the drug trafficking charges from December 21, 2022 until March 1, 2023. [ECF No. 64-1 ¶ 77]. On December 30, 2023, with the help of "N.M.," a witness known to the parties, Defendant joined a three-way phone call with the Massachusetts State Police at the Danvers Police Barracks. See generally [ECF No. 89-7]. During the call Defendant asked a trooper for his cellphones back and told the trooper that N.M. would go pick it up. [ECF No. 89-7 at 5]. The trooper instructed Defendant that he would need to send a

certified copy of a letter in order to permit the state police to release Defendant's property to someone else. [Id.]. Defendant responded that N.M. would "have the paper in the morning, in hand," and the trooper told N.M. he would be in touch. [Id. at 5–6]. The following day, however, N.M. called Defendant and reported that "the cops" called her back to say she would not be able to get the phones because "they're confiscated with everything else." [ECF No. 89-9 at 1–2]. Defendant asked if they were "seized," to which N.M. responded "yes." [Id. at 2]. Defendant made no other attempt to obtain his phone until January of 2024. [ECF No. 63 ¶ 8].

At some point following Defendant's December 21, 2022 drug trafficking arrest, a task force of state and federal officials started investigating Defendant's involvement in sex trafficking.[1] Officials interviewed four of Defendant's victims, and learned that Defendant used cell phones to take pictures of the women, post advertisements of the women, communicate with sex buyers, receive Cash App payments from buyers, and book hotel rooms. [ECF No. 64-1 ¶¶ 80–92].

Defendant was released on bail on the drug trafficking charges on March 1, 2023. [ECF No. 64-1 ¶ 78]. He remained at liberty until March 23, 2023, when he was arrested on a state sex trafficking warrant and held without bail. [Id. ¶ 79]. At no point during the period when he was at liberty did he attempt to acquire his phones. [Id. ¶ 78].

On April 28, 2023, officials investigating Defendant applied for and received federal search warrants, supported by an affidavit from State Trooper Kevin Flynn who was a member

---

[1] As discussed further infra, the affidavits and exhibits are unclear as to when exactly the investigation for sex trafficking began and which entities were involved at which stage of the investigation. State Trooper Kevin Flynn's affidavit submitted in support of the April 28, 2023 search warrant for the cellphones makes clear, however, that the investigation was the product of a joint task force between state and federal entities and that investigators took many steps between the drug trafficking and sex trafficking arrests to build probable cause for sex trafficking. See [ECF No. 64-1].

of the task force investigating Defendant for sex trafficking, for the two cell phones recovered on December 21, 2022. [ECF Nos. 64-1, 64-2, 64-3]; see generally [ECF No. 64-1]. Defendant was federally indicted on May 2, 2023. [ECF No. 1].

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment itself 'contains no requirements about when the search or seizure is to occur or the duration.'" United States v. Syphers, 426 F.3d 461, 469 (1st Cir. 2005) (quoting United States v. Gerber, 994 F.2d 1556, 1559 (11th Cir. 1993)).

> It is common for the police to temporarily seize a suspect's personal property if they have probable cause and intend to apply for a warrant to search the property for evidence of a crime. When the police do so, however, the Fourth Amendment requires that they act with diligence to apply for a search warrant.

United States v. Smith, 967 F.3d 198, 202 (2d Cir. 2020); see also United States v. Gomes, 330 F. Supp. 3d 720, 731 (D.R.I. 2018) ("A temporary warrantless seizure supported by probable cause is reasonable as long as the police diligently obtained a warrant in a reasonable period of time." (internal quotation marks omitted)). "The reasonableness of the delay is determined 'in light of all the facts and circumstances,' and 'on a case-by-case basis.'" United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009) (quoting United States v. Mayomi, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989)); see also Gomes, 330 F. Supp. 3d at 731 ("The reasonableness of the delay between lawful seizure and seeking a warrant is up to the discretion of the court. Courts must balance the privacy-related and the law enforcement-related concerns to determine if [an] intrusion was reasonable." (alteration in original) (internal citations and quotation marks omitted)).

In discussing the exclusionary rule, the First Circuit has stated that:

> [t]he sole purpose of the exclusionary rule, the [c]ourt has repeatedly held, is to deter future Fourth Amendment violations. Exclusion is not a personal constitutional right, nor one meant to redress the injury caused by a Fourth Amendment violation. The exclusionary rule therefore applies only where it result[s] in appreciable deterrence. The inquiry must also consider the substantial social costs generated by the exclusionary rule. The gravity of those costs requires that the rule be applicable only . . . where its deterrence benefits outweigh its substantial social costs.

United States v. Cruz-Mercedes, 945 F.3d 569, 576 (1st Cir. 2019) (alterations in original) (citations and quotation marks omitted).

If a warrant authorizes the search, law enforcement must comply with Federal Rule of Criminal Procedure 41(e)(2)(A)(i) by executing the warrant "within a specified time no longer than 14 days." Fed. R. Crim. P. 41(e)(2)(A)(i). With respect to electronically stored information, the "time for executing the warrant in Rule 41(e)(2)(A) . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Id. 41(e)(2)(B).

## III.   DISCUSSION

Defendant asserts that the approximately four-month delay between the December 21, 2022 seizure of the cellphones and the April 28, 2023 application for search warrants was unreasonable; that he was prejudiced by such delay; and that the evidence derived from that search should therefore be suppressed. See generally [ECF No. 62]. The Government argues that the delay in searching the phones was reasonable under the circumstances; that Defendant suffered no prejudice; and that, even if the delay is deemed unreasonable, the search is protected by the good faith exception. See generally [ECF Nos. 65, 89].

### A.     Seizure of Cell Phones

At the outset, the Court notes that it is unclear from the briefing whether Defendant maintains his argument from the initial motion to suppress that the initial seizure of the cellphones violated the Fourth Amendment.  Compare [ECF No. 62 at 5–7 (arguing seizure was unconstitutional)], with [ECF No. 93 at 3 ("The central focus is NOT whether or not the police had a right to seize the phones as a search incident to arrest or as an inventory matter. The central focus is NOT whether the police had a right to seize the phones at the time of arrest. The central focus is WHETHER OR NOT THE GOVERNMENT HAD A LEGITIMATE RIGHT TO DELAY SEEKING A SEARCH WARRANT TO EXAMINE THE CONTENTS OF THE PHONES FOR A PERIOD OF FOUR MONTHS.")].  In any event, the Court finds that there was probable cause during the December 21, 2022 arrest to believe that Defendant, who was found with multiple bags of fentanyl and crack cocaine under his seat and $4,500 in cash, was trafficking in drugs.  Further an adequate nexus existed between the cellphones and the suspected drug trafficking, as "it is common for drug dealers to use multiple cellphones to conceal their drug business." United States v. Lindsey, 3 F.4th 32, 40 (1st Cir. 2021); United States v. Kormah, No. 21-cr-40012, 2023 WL 1490372, at *10 (D. Mass. Feb. 1, 2023) ("Moreover, the fact that [Defendant] was in possession of two cellphones that morning creates a further inference that he was using the cellphones in his drug trafficking business as drug traffickers often use multiple phones — one used to communicate with drug customers and others used to communicate with suppliers, runners and other drug related associates.").

### B.     Reasonableness of Delay

As noted above, the parties agree that the central issue in this case is not whether the initial seizure of the cellphones was constitutional but rather whether the four-month delay in obtaining a search warrant following the seizure was reasonable.  In support of his argument,

Defendant relies primarily on United States v. Smith, a Second Circuit case. See [ECF No. 62 at 8–19]. There, in assessing whether a thirty-one day delay between police seizing a tablet and obtaining a search warrant for that tablet was reasonable, the Second Circuit considered four factors: "(1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized items, and (4) the strength of the state's justification for the delay." United States v. Smith, 967 F.3d 198, 206 (2d Cir. 2020). As it has before, see United States v. Berroa, No. 19-cr-10164, 2021 WL 149254, at *3 (D. Mass. Jan. 15, 2021), the Court finds the general analytical framework employed by the Second Circuit instructive. Accordingly, it will generally consider the Smith factors in assessing whether the four-month delay at issue here was reasonable.

        1.      Length of Delay

There is no bright-line rule separating reasonable delays from unreasonable ones. Berroa, 2021 WL 149254, at *3. This Court has at least on two occasions found a four-month delay in obtaining a search warrant for a cell phone to be reasonable, particularly when balanced against the other relevant factors. Kormah, 2023 WL 1490372, at *11 ("First, the length of the delay (some four months) falls somewhere in the middle of those delays which other courts have found reasonable versus unreasonable."); see also United States v. Blanchard, 544 F. Supp. 3d 166, 172 (D. Mass. 2021) ("The record shows that law enforcement held the Phone for a time period longer than was necessary to secure a warrant. However, weighed against defendant's diminished possessory interest and the transfer of the case from the state to the federal authorities, the four-month delay was not unreasonable.").

On the other hand, courts have also deemed delays far shorter than four months unreasonable. See, e.g., Smith, 967 F.3d at 202 (thirty-one days); Mitchell, 565 F.3d at 1353

7

(twenty-one days); United States v. Uu, 293 F. Supp. 3d 1209, 1211 (D. Haw. 2017) (twenty days).  In each of those cases, however, the contents of the phones or containers at issue were needed to discern whether there was a basis for a criminal charge, and, had the search been fruitless, there would have been no charges.  In this case, although Defendant was not indicted on criminal charges for sex trafficking until after the search of his phone, he was arrested on a state sex trafficking warrant over a month earlier, after an investigation uncovered four potential victims, online postings for commercial sex, and a "lengthy history of sex trafficking."  [ECF No. 64-1 ¶¶ 79, 82–92].  It is therefore clear that the charges were not contingent on the results of the search of the cellphones, which distinguishes this case from many of the cases of unreasonable delay referenced above.  See Kormah, 2023 WL 1490372, at *11 ("Additionally, unlike in several cases where the courts have found unreasonable delay, the evidence obtained from [Defendant's] phones was not necessary for the Government to determine that criminal charges against him were warranted, that is, probable cause existed to believe that he had committed a crime independent of the search of his cellphones.").

The cases cited by the Government in support of its view that the delay was not unreasonable are inapposite because they only address the delay in executing a warrant rather than in obtaining one.  For instance, in United States v. Veloz, see [ECF No. 65 at 9], although it took eighteen months for the authorities to complete their review of the contents of the devices, they had obtained a supplemental search warrant to search the contents of seized devices roughly a week after the seizure.  109 F. Supp. 3d 305, 310 (D. Mass. 2015); see id. at 313 ("Although reports reflecting on-going analysis of the seized data were generated [more than a year later], there is no dispute that the government copied or attempted to copy the data from the devices almost immediately after their seizure.").  Similarly, in United States v. Gorrell, see [ECF No. 65

8

at 9], though the court concluded that a ten-month delay in executing a search of a defendant's camera and computer was not unreasonable, the warrant had been obtained three days after the defendant was arrested.  360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004).

        2.        <u>Defendant's Relationship to the Phones and Efforts to Obtain Its Return</u>

A second factor identified by the <u>Smith</u> court as relevant to evaluating the reasonableness of a delay between seizure and authorization to search is the defendant's relationship to the cellphones, for example the extent to which the phone contains business or personal information, and the efforts that the defendant made to obtain its return.  There is no doubt that, in this day and age, a phone may contain virtually all of an individual's personal information, including contacts, emails, texts, banking information, photographs, and a host of other data that make the contents of a phone deeply personal.  See <u>Riley v. California</u>, 573 U.S. 373, 403 (2014) ("Modern cell phones are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" (quoting <u>Boyd v. United States</u>, 116 U.S. 616, 630 (1886))).  For that reason, cellphones may be important to defendants.  On the other hand, a cellphone, particularly in the hands of a drug trafficker and/or a sex trafficker, might be just a business tool without any personal information whatsoever.

Here, Defendant states in his affidavit that the cellphones contain personal information, including his "biographical details" and "names and addresses of persons related to [him] and friendly with" him.  [ECF No. 63 ¶ 13].  Defendant also made an effort, albeit not a particularly persistent one, to retrieve the cellphones shortly after his December 21, 2022 arrest, as detailed above, which cuts against a diminished possessory interest in the phone.  Cf. <u>Kormah</u>, 2023 WL 1490372, *11 (defendant "had not made any attempt to have the phones returned to him (or someone on his behalf)"); <u>Berroa</u>, 2021 WL 149254, *5 (defendant "made no effort to retrieve

9

the Phone until October 2020 even though it was seized in March 2019," and that "[t]his lack of attention to the Phone could mean that it contained incriminating evidence that he wanted to distance himself from or just that it was not that important to him"); Blanchard, 544 F.Supp.3d at 172 (defendant "never asked for the return of the [p]hone"). Additionally, it seems undisputed that the cellphones belong to him and that he did not consent to the seizure or search of the phones or taken any other action to reduce his possessory interest in them. See Smith, 967 F.3d at 208 ("This case is unlike those where courts have found that a defendant has a diminished property interest because the defendant . . . consented to the initial seizure . . . . [The defendant] did nothing to reduce his property interest by means of consent or voluntarily relinquishing control . . . .").[2]

On the other hand, as the Government points out, when Defendant asked N.M. to place the three-way call to the Danvers Police Barracks to investigate the return of his cellphones, "the property interest that [he] sought to assert was not in the devices themselves but, rather, in the funds held in his Cash App account that were accessible through his cell phone," which he needed to access in order to post bail. [ECF No. 89 at 7–9]. As evidence, the Government points to the fact that after N.M. successfully accessed Defendant's Cash App card to retrieve cash from an ATM and post Defendant's bail, Defendant no longer sought the return of the phones. [ECF No. 89 at 9]. This includes during the twenty-one days he was at liberty between arrests. [Id. at 7]. Additionally, Defendant was in custody when he made his one attempt to get

---

[2] Defendant also states in the affidavit in support of his motion that he "did not know" where his phones were located. [ECF No. 63 ¶ 7]. This claim is rebutted by the Government's representation that it provided the search warrants and Trooper Flynn's affidavit to Defendant before the automatic discovery deadline on June 2, 2023, the latter of which explained that the cellphones were located at the state police barracks in Salem, Massachusetts. [ECF No. 65 at 12]; see also Levin v. Berley, 728 F.2d 551, 553 (1st Cir. 1984) ("[A] client is charged with the knowledge of his attorney.").

the cellphones before the search warrants were obtained, see [ECF No. 65 at 12–13; ECF No. 89 at 10], a fact that some courts have identified as being relevant to this analysis. See, e.g., United States v. Conley, 342 F. Supp. 3d 247, 269 (D. Conn. 2018) ("Additionally, [the defendant] had a diminished possessory interest in the cell phone because Conley was detained at Wyatt Detention Facility following the arrest, and Wyatt does not permit its inmates to possess cell phones."); United States v. Brantley, No. 17-cr-00077, 2017 WL 5988833, at *2 (N.D. Ga. Dec. 4, 2017) ("Furthermore, [defendant], having been arrested and detained, was not deprived of access to and use of the seized cellular telephones, because he was in custody, and he does not contend he was allowed possession of a cell phone while detained."). Moreover, whether probable cause existed to seize the cellphones may also be relevant to the analysis. See Smith, 967 F.3d at 208–09 ("[T]he existence of probable cause had bearing on Smith's possessory interest. It entitled the police to immediately seize the tablet so that they could apply for a warrant to search its contents.").

### 3. Justification for Delay

A third factor that the Court will consider is the Government's purported justification for the delay. Here, the Government offers two such justifications: 1) that "[i]n the era of pervasive cell phone usage, the government does not search all cell phones it seizes pursuant to search warrants even if it has authority to do so," and 2) "because [Defendant] was originally charged with state offenses and then charged with federal offenses, there was inevitable friction during the case transition from state to federal investigators." [ECF No. 65 at 10].

Regarding the first justification, while the Court is mindful of the Government's need to judiciously marshal its resources, this explanation only goes so far. That the Government sometimes forgoes or delays searches of seized phones does not relieve it of its obligation to

11

adhere to the Fourth Amendment by obtaining the authority to search them in a reasonably timely manner. At a certain point, the Government must decide between applying for a search warrant or foregoing the potential evidence on the device. As discussed above, the Government cites a number of cases for the proposition that courts have permitted delays in cases involving computers because searching computers is complex. Although the search of a phone is analogous to the search of a computer, the cases cited by the Government generally speak to the time it takes to complete a search after a warrant has been obtained, rather than the time to acquire the authority to search. Here, the issue is that the Government waited four months before seeking a warrant. Complexity may be a sound justification for failing to timely complete a search but this is a different issue than a failure to timely obtain a warrant in the first instance.

That said, the Court recognizes that some complexity in the investigation here may have contributed to the delay, given that law enforcement officers were not aware of all (or even a majority of) the relevant facts related to sex trafficking at the time of the seizure. Cf. Berroa, 2021 WL 149254, at *5 (considering the fact that "nothing the Government learned during the fifteen month[]" delay "affected the substance of the warrant application" as relevant to the Government's complexity argument). From the time of the seizure and the almost concurrent interview with Victim 1, the sex trafficking investigation appears to have proceeded diligently. For example, Trooper Flynn attests that, throughout March 2023, among other things, investigators 1) interviewed employees at two hotels where Defendant and Victim 1 had frequented, and these hotel employees "indicated that through their experience working in the hotel industry they had observed activity that they recognized to be consistent with person(s) engaged in commercial sex in rooms that [Defendant] had rented," [ECF No. 64-1 ¶ 91], 2) obtained a state search warrant for an apartment where Victim 1 told investigators that Defendant

"kept personal items of women who were engaging in commercial sex," which uncovered identification documents for Victim 1 as well as two other women there, [id. ¶¶ 30–31], and 3) entered into prosecution agreements with various victims to secure their grand jury testimony. [Id. ¶¶ 13, 36].

The Government's second justification —the transition from state to federal investigators — may carry more weight. Kormah, 2023 WL 1490372, at *11 ("There is nothing in the record to suggest that the delay was the result of bad faith — the delay can largely be attributed to the fact that jurisdiction of the case was transferred from the state to the federal government."); Blanchard, 544 F. Supp. 3d at 172 (considering fact that federal authorities did not learn about phone seized in May 2019 until August 2019 and that, before applying for a search warrant in September, "federal agents processed a large volume of evidence").  On one hand, the record is unclear as to when exactly federal authorities became involved with the sex trafficking investigation, which makes it difficult for the Court to determine whether the "transition" of the case justifies the four-month delay in obtaining a federal search warrant.  Trooper Flynn's affidavit characterizes the sex trafficking investigation as "a collaborative effort by members of the Attorney General's Office State Police Detective Unit (MSP-AGO), the Federal Bureau of Investigations Human Trafficking Task Force, the Massachusetts State Police Danvers Barracks (MSP-A6), and the Essex County District Attorney State Police Detectives' Unit," [ECF No. 64-1 ¶ 7], but the affidavit does not explain when the task force, rather than the state police, started investigating or when federal authorities joined the effort.  If federal authorities became involved in the investigation shortly after Defendant's arrest, then the idea of a delay from any "transition" rings hollow.  On the other hand, the affidavit does make clear that Defendant was arrested on a state warrant for drug trafficking in December 2022 and on a state warrant for sex

13

trafficking in March 2023, and that he was not federally indicted until May 2023. This supports the notion that federal authorities became interested in the case at a later date, which could have necessitated a transition of information and thereby caused a delay.

### 4. Prejudice

The Court will also consider the prejudice to Defendant resulting from the delay as the final reasonableness factor.[3] This is distinct from any prejudice that might result from the use of evidence linked to the cellphones. Defendant argues that because the data on the cell phone ostensibly relates to events long passed, Defendant "will encounter and has encountered difficulties marshalling evidence to counteract the Government's intended use of the cell phone contents." [ECF No. 62 at 21]. It is difficult to imagine, however, that the four-month delay between the seizure of the cell phone and the search warrant contributed in any substantial way to this issue. Alternatively, Defendant also argues that "believing that his cell phones were seized because of his arrest for drug trafficking, he had no reason to believe that a search of his cell phones could occur for crimes with which he had not been charged." [ECF No. 62 at 21–22]. While the Court acknowledges that Defendant was arrested on charges unrelated to sex trafficking, Defendant's affidavit and calls with N.M. make clear that he knew his phones had been seized. [ECF No. 63 ¶ 7; ECF No. 89-9 at 2–3]. In addition, he was "presumably familiar with [their] contents," including that they contained evidence of other crimes, and "could have taken [the contents] into account" in making decisions about whether to assert a possessory interest in them and/or in making any other litigation decisions. Berroa, 2021 WL 149254, at *6.

---

[3] Although the Smith court did not include prejudice among the reasonableness factors, the Court believes it is relevant to the analysis.

Following consideration of the factors discussed above, the Court concludes as follows regarding the reasonableness of the delay between arrest and obtaining a warrant: under the facts of this case, four months was a reasonable delay given that: (1) the phones were lawfully seized, (2) the Government investigation into sex trafficking was diligently pursued and any delay when federal officials became involved was reasonable, (3) Defendant's only request for the phones before the search occurred while he was in custody, his interest in it was focused on his ability to access Cash App to post his bail, rather than the return of any personal information housed within the phone, and Defendant did not otherwise seek to obtain the phones even after bail had been posted until January 2024, and (4) Defendant was, at most, only marginally prejudiced. While a more prudent course may have been for the Government to apply for the search warrant as soon as they suspected Victim 1 to have been trafficked, which occurred as early as December 2022, the Court cannot say that on balance the four-month delay was unreasonable.

### C. Good-Faith Exception

Even if the delay were unreasonable, the Court concludes that the officers' reliance on the warrant to search the cell phones was in good faith and suppression would therefore be inappropriate in any event. The Supreme Court has held that suppression is inappropriate where officers' good faith reliance on a warrant is reasonable. United States v. Leon, 468 U.S. 897, 922 (1984). In this context, good faith means that law enforcement acted in "objectively reasonable reliance" on the defective search warrant. Id.; see also United States v. Levin, 874 F.3d 316, 322 (1st Cir. 2017) ("When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. However, when the police act with an objectively reasonable good-faith belief that their conduct is lawful . . . or when their conduct involves only simple, isolated negligence . . . the deterrence rationale loses much of its force, and exclusion cannot pay

15

its way."). The government bears the burden of demonstrating good faith. See United States v. Vigeant, 176 F.3d 565, 571–73 (1st Cir. 1999).

Evidence obtained by "officers reasonably relying on a warrant issued by a detached and neutral magistrate" should not be suppressed or excluded if that warrant is later found to be invalid. Leon, 468 U.S. at 913, 922 (finding that the nonexistent deterrent benefit of exclusion did not outweigh the significant costs of otherwise guilty perpetrators gaining bargaining power or remaining free). There are circumstances when the good-faith exception does not apply, including when the magistrate judge was knowingly or recklessly misled by an affiant, see id. at 923 (citing Franks v. Delaware, 438 U.S. 154, 155–56 (1978)), when the magistrate judge abandoned his or her judicial role, see id. (citing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326–29 (1979) (reversing denial of motion to suppress where local justice actively participated in a search authorized by a warrant issued by the same justice)), and when an affidavit supporting a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]" id. (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Regarding the final prong, in assessing an objectively reasonable good-faith belief in the delay context, courts look to whether a reasonably well-trained officer would recognize that the delay violated the Fourth Amendment. See Smith, 967 F.3d at 212.

Here, Defendant does not claim that the magistrate judge was misled or stepped outside of his judicial role, instead arguing that the Government had no "objectively reasonable grounds to delay seeking a search warrant." See [ECF No. 93 at 10]. The Court concludes, however, that the law enforcement officers here acted with an "objectively reasonable good-faith belief that their conduct [wa]s lawful," Levin, 874 F.3d at 322, and that a reasonably well-trained law enforcement officer, under the circumstances presented, would not have known that waiting four

months to seek a search warrant for the phones would violate the Fourth Amendment, Smith, 967 F.3d at 212.  As is clear from this order, the "constitutional reasonableness of delay depends on the assessment and balancing of multiple factors" and this, like many areas of Fourth Amendment law, has not "reduced itself to bright-line rules."  Id.  Although a reasonably well-trained officer should generally recognize that a warrant should be timely sought, the Court cannot, in the absence of any countervailing evidence, find bad faith where the phones were seized incident to an arrest, the affidavit for the search warrant extensively detailed probable cause, and the warrant was sought by federal law enforcement shortly after it got involved in the case.  Accordingly, under these circumstances, because "exclusion cannot pay its way," Levin, 874 F.3d at 322, the Court will not suppress the evidence at issue.

## IV.     CONCLUSION

Accordingly, Defendant's motion to suppress, [ECF No. 61], is **DENIED**.

**SO ORDERED.**

October 22, 2024                                                                /s/ Allison D. Burroughs
                                                                                          ALLISON D. BURROUGHS
                                                                                          U.S. DISTRICT JUDGE